**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| VIP PHARMACY, INC., | : | Bankruptcy No. 21-10428(ELF) |
| | : | |
| *Debtor*. | : | (Subchapter V Small Business) |
| | : | |

**SMALL BUSINESS DEBTOR'S**
**PLAN OF REORGANIZATION**
**DATED MAY 24, 2021**

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of VIP Pharmacy, Inc. and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY _____ **[OBJECTION DATE/TIME]**.

YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY _____ **[DEADLINE]**. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:

Paul J. Winterhalter, Esquire
OFFIT KURMAN, P.C.
401 Plymouth Road, Suite 100
Plymouth Meeting, PA 19462
Telephone (267) 338-1370
*Counsel for the Debtor, VIP Pharmacy, Inc.*

A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR ____ **[HEARING   DATE/TIME]** _____IN   COURTROOM No. 1 AT   THE ROBERT N.C. NIX, SR. FEDERAL COURTHOUSE, 900 MARKET STREET, PHILADELPHIA, PA 19107.

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

Respectfully submitted,

**OFFIT KURMAN, P.C.**

By: */s/ P.J. Winterhalter*
PAUL J. WINTERHALTER
401 Plymouth Road, Suite 100
Plymouth Meeting, PA 19462
Telephone: (267) 338-1370
Facsimile: (256) 338-1335
E-mail: pwinterhalter@offitkurman.com

*Counsel for the Debtor in Possession,*
*VIP Pharmacy, Inc.*

Dated: May 24, 2021

## TABLE OF CONTENTS

ARTICLE 1 - HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR ................... 1

    1.1.    Nature of the Debtor's Business. ........................................................................ 1

    1.2.    History of Business Operations of the Debtor ....................................................... 1

    1.3.    Filing of the Debtor's Chapter 11 Case. .............................................................. 1

    1.4.    Legal Structure and Ownership. ......................................................................... 1

    1.5.    Debtor's Assets. ................................................................................................ 1

    1.6.    Debtor's Liabilities. ........................................................................................... 2

    1.7.    Current and Historical Financial Conditions. ........................................................ 2

    1.8.    Events Leading to the Filing of the Bankruptcy Case. ........................................... 3

    1.9.    Significant Events During the Bankruptcy Case. .................................................. 3

    1.10.  Projected Recovery of Avoidable Transfers [Choose option] ................................ 3

ARTICLE 2 - THE PLAN ..................................................................................................... 4

    2.1.    Unclassified Claims. .......................................................................................... 4

        A.   Administrative Expenses ......................................................................... 4

        B.   Priority Tax Claims. ................................................................................ 6

    2.2.    Classes of Claims and Equity Interests. .............................................................. 7

        C.   Classes of Secured Claims ....................................................................... 7

        D.   Classes of Priority Unsecured Claims. ...................................................... 7

        E.   Class[es]of General Unsecured Claims ..................................................... 7

        F.   Class[es] of Equity Interest Holders. ........................................................ 8

        G.   Impaired Claims. .................................................................................... 8

    2.3.    Estimated Number and Amount of Claims Objections ........................................... 8

    2.4.    Treatment of Executory Contracts and Unexpired Leases. .................................... 8

        A.   Assumption of Executory Contracts ......................................................... 8

        B.   Rejection of Executory Contracts and Unexpired Leases. .......................... 9

    2.5.    Means for Implementation of the Plan .................................................................. 9

    2.6.    Payments. ...................................................................................................... 10

    2.7.    Post-Confirmation Management. ....................................................................... 10

    2.8.    Projections in Support of Debtor's Ability to Make Payments
         Under the Proposed Plan ................................................................................... 10

i

ARTICLE 3 - FEASIBILITY OF PLAN ..................................................................... 10

    3.1.    Ability to Initially Fund Plan. ............................................................. 10

    3.2.    Ability to Make Future Plan Payments And Operate Without
          Further Reorganization. ....................................................................... 11

ARTICLE 4 - LIQUIDATION ANALYSIS ............................................................ 11

ARTICLE 5 - DISCHARGE ................................................................................. 11

    5.1.    Discharge ............................................................................................. 11

ARTICLE 6 - GENERAL PROVISIONS ............................................................... 12

    6.1.    Title to Assets. .................................................................................... 12

    6.2.    Binding Effect. .................................................................................... 12

    6.3.    Severability. ........................................................................................ 12

    6.4.    Retention of Jurisdiction by the Bankruptcy Court. ........................... 12

    6.5.    Captions. ............................................................................................. 13

    6.6.    Modification of Plan. .......................................................................... 13

    6.7.    Final Decree. ....................................................................................... 13

ARTICLE 7 - GENERAL INFORMATION PROVISIONS .................................... 13

ARTICLE 8 - DEFINITIONS ............................................................................... 15

EXHIBIT A - STATEMENT OF INCOME & EXPENSES .................................... 19

EXHIBIT B - LIQUIDATION ANALLYSIS .......................................................... 20

# ARTICLE 1
## HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

**1.1.    Nature of the Debtor's Business.**

The Debtor, VIP Pharmacy, Inc. is a single location retail pharmacy doing business at 7737 New Falls Road in Levittown, Pennsylvania.   The Debtor business provides prescription drug services and medications to customers and sells other over the counter health related products and durable goods and medical equipment.

**1.2.    History of Business Operations of the Debtor**

The Debtor was formed in the Commonwealth of Pennsylvania on September 28, 2010. The Debtor has been operating at its present location since the commencement of its existing lease beginning August 1, 2016.

**1.3.    Filing of the Debtor's Chapter 11 Case.**

On February 23, 2021, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the United States Bankruptcy Court for the Eastern District of Pennsylvania.

**1.4.    Legal Structure and Ownership.**

The Debtor is a Pennsylvania business Corporation having been incorporated in the Commonwealth of Pennsylvania on September 28, 2010.  Kaushal Patel is the sole shareholder of the Debtor. Mr. Patel is a licensed pharmacist in the Commonwealth of Pennsylvania.  Mr. Patel is also the sole officer of the Debtor.

**1.5.    Debtor's Assets.**

The assets of the Debtor are limited to the cash, prescription and stock inventory, and monies due to the entity for prior sales of prescription medications.  The Debtor also has some limited store fixtures and shelving used in the operation of the pharmacy, minimal equipment, and also has a security deposit held by its landlord under its commercial real estate lease.  While the cash in its business operating account is regularly used to pay operating expenses of the business on a daily basis, the normal average balance in the account totals approximately $20,000.  The normal inventory levels for both prescription medications and general inventory normally totals approximately $150,0000 and the Debtor has approximately $200,000 in collectible outstanding receivables (Insurance Reimbursement Claims Receivable) on any given day.  The Landlord holds a Security Deposit in the amount of $6500.  The Store fixtures, shelving and miscellaneous equipment have a book value of approximately $13,500.   All total the Debtor believes the current value of its assets is $390,000.

1

**1.6.**    **Debtor's Liabilities.**

A number of creditors have filed Financing Statements and entered security agreements with the Debtor claiming a lien in assets which far exceed the actual value of those assets.

Originally, Citizens Bank held a first perfected security interest in the assets of the Debtor dated January 16, 2014 followed by a UCC-1 Financing Statement filed on behalf of Cardinal Health dated June 15, 2015.  Citizen's Bank loan obligation was fully satisfied prior to the Bankruptcy filing and no longer holds a claim against the Debtor.  Cardinal Health, however, did execute a Subordination Agreement dated July 13, 2016 related to its lien position to the claim of Woori American Bank.  Woori American Bank has an outstanding primary claim due to it in the amount of $627,225.05 as of April 12, 2021.  In addition to the primary loan obligation owed by the Debtor to Woori American Bank, the Debtor also separately guaranteed two other loan obligations issued by Woori American Bank to non-debtor single location business entity pharmacies owned by the principal of the Debtor or his wife, Shital Patel.  One loan was issued to an entity by the name of Pennymed Pharmacy, LLC on December 18, 2017 which has a separate balance outstanding of $152,781.36 and a second loan was issued through Woori American Bank to Pharmacy of Newtown, LLC and guaranteed by the Debtor.  The Pharmacy of Newtown, LLC loan has a balance outstanding of $203,211.96.  As a result of the guarantees and recorded financing statements Woori American Bank's aggregate secured claim totals $983,217.    H.D. Smith (October 9, 2018), Burlington Drug Company (January 18, 2019), and Rochester Drug Company (February 13, 2019) also hold recorded liens subordinate to the prior perfect lien interests of Woori American Bank and have each filed Proofs of Claims with the Bankruptcy Court alleging their claims are secured.

The Debtor's Bankruptcy Schedules also reflects that there was a handful of general unsecured claims totaling approximately $50,000 as of the Bankruptcy.  In addition, at the time of the filing, the Debtor was identified as a potential defendant or liability party to an alleged False Act Claim being investigated by the United States Attorney's Office.  No formal Complaint has ever been filed or presented, however, in an abundance of caution, the Debtor did schedule the United States ex rel. John Doe, Relator as a unknown potential claimant.  The Debtor also listed the law firm of Bochetto & Lentz, P.C. as the legal counsel for the unidentified relator  as a claim may relate to any claim for legal or professional fees under a False Claims Act recovery action.

I nominal claim for less than $1000 has also been filed against the Debtor by the Internal Revenue Service.

**1.7.**    **Current and Historical Financial Conditions.**

*[The Debtor's relevant financial data, including the Debtor's historical and projected financial performance, should be summarized here, with reference to attached Exhibits like the Debtor's most recent financial statements, if any, a summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case, etc.]*

### 1.8.    Events Leading to the Filing of the Bankruptcy Case.

The Debtor's bankruptcy filing was primary caused by its inability to reach any type of resolution regarding the underlying claim outstanding to H.D.Smith.  As referenced above, H.D.Smith, the predecessor to Amerisource Bergen, is a creditor of the Debtor who provided prescription product inventory to both the Debtor and several other separate non-debtor independent retail pharmacy entities.  The product deliveries were the subject to a purported product financing agreements which was intended to be collaterally secured by a pledge of assets owned and secured against the various business assets.  The aggregate claim of H.D.Smith, based on its filed Proof of Claim is in excess of $2,300,000.  H.D. Smith commenced litigation on this claim amount in the Court of Common Pleas of Bucks County, Pennsylvania.  The Debtor had no ability to further fund the litigation defense and efforts to reach any realistic settlement were unsuccessful requiring the Debtor to seek relief under the United States Bankruptcy Code.

### 1.9.    Significant Events During the Bankruptcy Case.

The bankruptcy proceeding instituted by the Debtor has been deliberate at best.  The Debtor has focused significant efforts on maintaining its business customer base and has engaged in a critical program to be a primary Bucks County Location for vaccinating residents in response to the COVID-19 pandemic.   The Debtor and its principal have also focused efforts on confirming the propriety and legitimacy of secured creditor's valid positions.  The Debtor has made regular payments on account of the loan obligations due to its primary secured creditor Woori American Bank and has arranged and confirmed the necessary consent permitting its continued use of cash collateral of the Woori Bank interests is such collateral.

The Debtor did engage the law firm of Offit Kurman, P.C. to assist in representing the Debtor with the Chapter 11 case. The Debtor has also recently filed a separate application to formally engage an accountant to assist in the preparation of financial reporting obligations for the purposes of the small business bankruptcy case.

Contemporaneous with the filing of this Small Business Plan of Reorganization, the Debtor will be filing a Complaint to formally determine the extent and validity of each alleged secured creditors true secured interest.  This adversary proceeding is anticipated to cause many of the alleged secured claim interests to be rendered unsecured.

### 1.10.    Projected Recovery of Avoidable Transfers [Choose option]

The Debtor does not intend to pursue any preference, fraudulent conveyance, or other avoidance actions.  The Debtor did not make any significant payments to any creditor other than in ordinary course of its operational practice during the several years leading up to the Bankruptcy filing.  As a result, the Debtor does not believe it has any legitimate claim to avoid any payments made to any particular vender.  This should not be interpreted as any indication that the Debtor is not intending to seek avoidance of certain creditors alleged secured claim interests.

# ARTICLE 2
## THE PLAN

The Debtor's Plan must describe how its Creditors will be paid.  Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment.  For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired.  A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled.  If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote.  A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.  A class that is not impaired is deemed to accept the Plan.

**2.1.    Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan does not place the following Claims in any class:

**A.    Administrative Expenses**

The Debtor must pay all Administrative Expenses in full.   If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense.  Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order.   If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.    If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided.  This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2.      If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3.      Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Subchapter V Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | These obligations are being paid and will continued to be paid in the normal course of business operations of the Debtor. | Payments outside the Plan. |
| Administrative Tax Claim | The Internal Revenue Service has filed an estimated Corporate Tax Claim in the amount of $579. The Debtor is investigating this claim. If the claim amount is correct, the Claim will be paid in full. | Payment through the Plan upon confirmation. |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | None exist. | No claims in this category. |

| Professional fees, as approved by the Bankruptcy Court | Offit Kurman, P.C. as legal counsel for the Debtor. As of April 30, 2021, counsel has incurred approximately $28,000 in fees on behalf of the Debtor.  These fees will be subject to a future fee application. | After Bankruptcy Court approval, Payment through the Plan shall by made for all approved legal and professional fees. _____ _____ |
| Clerk's Office fees | | Paid in full on the Effective Date. |
| Other Administrative Expenses | | Payment through the Plan as follows: _____ _____ |
| Subchapter V Trustee | | Upon application under § 330 and after Bankruptcy Court approval, payment through the Plan. |
| TOTAL | | |

B.      **Priority Tax Claims.**

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

**2.2**    **Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**C.**    **Classes of Secured Claims**

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code.  If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

The following lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

1.   Woori American Bank.

Woori American Bank shall have a allowed Secured Claim under the Plan in the amount of $390,000 against the Debtor based on the actual value of the existing assets of the Debtor.  The Plan shall provide for the Payment of the entire balance of the Woori Claim together with interest at a rate of 5% interest on such total claim balance amortized over a period of 15 years with a 5 year balloon payment obligation for the balance of the indebtedness outstanding at the end of the 5 year term.

2.   All other alleged secured claims made and presented against assets of the Debtor shall be subject to an adversary proceeding instituted by the Debtor seeking to determine the appropriate secured status of such claims pursuant to the authority under 11 U.S.C. §506 and such claims will be subject to objection and relegation to a general unsecured claim status and treated similar to claims in this General Unsecured Class.

**D.**    **Classes of Priority Unsecured Claims.**

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

**E.**    **Class[es]of General Unsecured Claims**

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

The Debtor shall pay the sum of $200 per month into a unsecured creditors claim fund each month over a period of 5 years for the purposes of effectuating a pro-rata

distribution to creditors holding allowed general unsecured claims. On each anniversary date of confirmation of the Plan, the Debtor shall make a pro-rata distribution to each allowed unsecured claim based on the respective allowed amount of the unsecured claim to the total allowed unsecured claims.

### F.    Class[es] of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. Kaushal Patel is the sole shareholder of the Debtor. During the first 5 years following confirmation there shall be no distribution on account of the Equity interest holders claim.

### G.    Impaired Claims.

The Debtor has determined all creditors' claims, other than the Claim of the Internal Revenue Service, including the claims of alleged every alleged secured creditor claiming a lien on assets of the Debtor, is IMPAIRED under this Plan as proposed. Solicitation in support of the Plan shall be sought from all creditors holding impaired claims.

### 2.3.    Estimated Number and Amount of Claims Objections.

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

### 2.4.    Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

### A.    Assumption of Executory Contracts.

The Debtor's Real Estate Lease and any existing contract the Debtor presently maintains with the Pennsylvania Lottery Commission shall be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

**B.      Rejection of Executory Contracts and Unexpired Leases.**

The Debtor does not believe any other contract or lease exists which  shall be rejected.

Further, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not assumed before the date of the order confirming the Plan.  Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases.  If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract shall be 30 days from the filing of this Plan of Reorganization or June 24, 2021.**  Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.

**2.5.    Means for Implementation of the Plan.**

The Debtor shall fund all payments required under the Plan from normal operating revenues of the Pharmacy Business.  The Debtor projects there shall be sufficient revenues going forward to meet all Plan payment obligations.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor.  The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

The Board of Directors of the Debtor, which is made up of a single individual, Kaushal Patel,  immediately prior to the Effective Date, shall serve as the initial Board of Director of the Reorganized Debtor on and after the Effective Date.  The sole continuing member of the Board of Directors shall serve in accordance with applicable non-bankruptcy law and the Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time.

**2.6.**    **Payments.**

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Subchapter V Trustee pursuant to §1194(a). Once the Subchapter V Trustee's service is terminated under § 1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

**2.7.**    **Post-Confirmation Management.**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

President/Secretary:        Kaushal Patel
Annual Compensation:    $65,000 per annum plus Life Insurance Contribution

**2.8.**    **Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan**

Debtor has provided projected financial information reflecting the current Income Statement of the Debtor reflecting operations year to date through April 30, 2021. The current performance reflects and confirms the Debtor's ability to fund its plan of reorganization.

**ARTICLE 3**
**FEASIBILITY OF PLAN**

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**3.1.**    **Ability to Initially Fund Plan.**

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date.  Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto as Exhibit A.

**3.2.** **Ability to Make Future Plan Payments And Operate Without Further Reorganization.**

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Subchapter V Trustee as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in Section 2.8 above.

The Debtor's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post- confirmation taxes, of $_____. The final Plan payment is expected to be paid on about August 1, 2026.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4
## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation.  A liquidation analysis is attached hereto as Exhibit B.

## ARTICLE 5
## DISCHARGE

**5.1.** **Discharge.**  If the Plan is confirmed under § 1191(a), on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

11

# ARTICLE 6
## GENERAL PROVISIONS

### 6.1.    Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2.    Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 6.3.    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4.    Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**6.5.**   **Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**6.6.**   **Modification of Plan.**

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**6.7.**   **Final Decree.**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.


# ARTICLE 7
## GENERAL INFORMATION PROVISIONS


**What Is the Debtor Attempting to Do in Chapter 11?**  Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Under Chapter 11, a debtor attempts to restructure the claims held against it.  Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11.  When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11.  The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?**  In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan.  If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor and there has been no objection or challenge to the secured status of your claim. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Article 2 of the Plan lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization [or Liquidation] Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization [or Liquidation]?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is impaired under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** Section 2.2 (E.) of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?**  The Plan is being distributed to all claim holders for their review, consideration and approval.  The deadline by which ballots must be returned is _____.   Ballots should be mailed to the following address:

Paul J. Winterhalter, Esquire
OFFIT KURMAN, P.C.
401 Plymouth Road, Suite 100
Plymouth Meeting, PA 19462
Telephone (267) 338-1370
*Counsel for the Debtor, VIP Pharmacy, Inc.*

**How Do I Determine When and How Much I Will Be Paid?**  In [Section/Paragraph] _____ the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

**ARTICLE 8**
**DEFINITIONS**

8.1.    The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.  The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

8.2.    **Administrative Claimant**: Any person entitled to payment of an Administration Expense.

8.3.    **Administrative Convenience Class**: A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

8.4.    **Administrative Expense**: Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

8.5    **Administrative Tax Claim**:  Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

8.6.    **Allowed Claim**: Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

8.7.    **Allowed Priority Tax Claim**: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

8.8.    **Allowed Secured Claim**: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

8.9.    **Allowed Unsecured Claim**: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

8.10.   **Bankruptcy Code or Code**: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

8.11.   **Bankruptcy Court**: The United States Bankruptcy Court for the Eastern District of Pennsylvania.

8.12.   **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure.

8.13.   **Cash**: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

8.14.   **Chapter 11 Case**: This case under chapter 11 of the Bankruptcy Code in which VIP Pharmacy, Inc. is the Debtor-in-Possession.

8.15    **Claim**: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

8.16.   **Class**: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

8.17.   **Confirmation**: The entry by the Bankruptcy Court of an order confirming this Plan.

8.18.   **Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

8.19.   **Confirmation Hearing**: The hearing to be held on _____, 20__ to consider confirmation of the Plan.

8.20.   **Confirmation Order**:  An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

8.21.   **Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

8.22.   **Debtor and Debtor-in-Possession**: VIP Pharmacy, Inc., the debtor-in-possession in this Chapter 11 Case.

8.23.   **Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

8.24.   **Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

8.25.   **Effective Date**: The Effective Date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

8.26.   **Equity Interest**: An ownership interest in the Debtor.

8.27.   **Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

8.28.   **Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

8.29.   **IRC**: The Internal Revenue Code

8.30    **Petition Date**: February 23, 2021, the date the Chapter 11 Petition for relief was filed.

**8.31**    <u>**Plan**</u>: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**8.32.**    <u>**Priority Tax Claim**</u>: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**8.33.**    <u>**Reorganized Debtor**</u>: The Debtor after the Effective Date.

**8.34.**    <u>**Schedules**</u>: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**8.35.**    <u>**Secured Creditor**</u>: Any creditor that holds a Claim that is secured by property of the Debtor.

**8.36.**    <u>**Trustee**</u>: Leona Mogavero, Esquire the Subchapter V Trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**8.37.**    <u>**Unsecured Creditor**</u>: Any Creditor that holds a Claim in the Chapter 11 case which is not aa allowed secured Claim.

Respectfully submitted,

**OFFIT KURMAN, P.C.**

By: <u>*/s/ P.J. Winterhalter*</u>
PAUL J. WINTERHALTER
401 Plymouth Road, Suite 100
Plymouth Meeting, PA 19462
Telephone: (267) 338-1370
Facsimile: (256) 338-1335
E-mail: pwinterhalter@offitkurman.com

*Counsel for the Debtor in Possession,*
*VIP Pharmacy, Inc.*

Dated: May 24, 2021

Exhibit "A"

## STATEMENT OF INCOME & EXPENSES FOR V I P PHARMACY-2021

| PARTICULARS | JANUARY | FEBRUARY | MARCH | APRIL | MAY | JUNE | JULY | AUGUST | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1-American Expr. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 2-Merchant Dep. | 13999.38 | 13909.55 | 15978.40 | 15186.93 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 59074.26 |
| 3-Telecheck Dep. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 4-Cash Sales | 0.00 | 54.00 | 3221.00 | 3377.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6652.00 |
| POS SALES TOTAL | 13999.38 | 13963.55 | 19199.40 | 18563.93 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 65726.26 |
| 5-Argus Deposits | 12585.05 | 11369.96 | 11238.37 | 21329.67 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 56523.05 |
| 6-Direct Dep.(Ins.) | 3607.09 | 22999.69 | 78840.26 | 16532.73 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 121979.77 |
| 7-MagIn.Health/Pace | 74.96 | 762.34 | 212.63 | 428.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1478.87 |
| 8-Epic pharmacy-EOI | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 9-Net. Rx Dep. | 214489.46 | 172647.57 | 166553.26 | 232953.07 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 786643.36 |
| INSUR. SALES TOTAL | 230756.56 | 207779.56 | 256844.52 | 271244.41 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 966625.05 |
| TOTAL SALES | 244755.94 | 221743.11 | 276043.92 | 289808.34 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1032351.31 |
| 01-Purchase_Rx | 225123.47 | 171495.83 | 185048.89 | 205064.91 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 786733.10 |
| 02-Purchase Exp. | 544.26 | 72.80 | | 2778.45 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3395.51 |
| Total Purchases=X | 225667.73 | 171568.63 | 185048.89 | 207843.36 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 790128.61 |
| 03-Bank Charges | 1158.73 | 895.66 | 810.13 | 862.38 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3726.90 |
| 04-Insurance Exp. | 2285.94 | 2285.94 | 3265.68 | 2285.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10123.50 |
| 05-Interest Exp. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 06-Legal & Prof. Fees | 692.19 | 23926.83 | 1092.19 | 744.18 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26455.39 |
| 07-Loan Payments | 11531.51 | 10982.45 | 10982.45 | 11532.21 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 45028.62 |
| 08-Maint.& Repairs Exp. | 135.00 | 0.00 | 135.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 270.00 |
| 09-Management Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 10-Market.& Advt. Exp. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 11-Member.& Lic. fees | 0.00 | 145.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 145.00 |
| 12-Office Exp. | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 13-Rent Exp. | 6465.11 | 6828.73 | 6495.08 | 6495.08 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 26284.00 |
| 14-Salaries Exp. | 20073.73 | 20302.98 | 20172.29 | 31826.55 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 92375.55 |
| 15-Tax Exp. | 8459.19 | 8999.52 | 8119.16 | 10369.10 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35946.97 |
| 16-Telephone Exp. | 484.91 | 0.00 | 484.91 | 484.91 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1454.73 |
| 17-Utilities exp. | 691.77 | 142.11 | 1393.68 | 1795.26 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4022.82 |
| 18-Vehicle exp. | 147.50 | 0.00 | 0.00 | 134.54 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 282.04 |
| Other Exp.=Y | 52125.58 | 74509.22 | 52950.57 | 66530.15 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 246115.52 |
| TOTAL EXP.=B (X+Y) | 277793.31 | 246077.85 | 237999.46 | 274373.51 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1036244.13 |
| NET P/L = A - B | (33037.37) | (24334.74) | 38044.46 | 15434.83 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (3892.82) |

**EXHIBIT B**

**Liquidation Analysis**

**[Pursuant to Section 1190(1)(B) of the Bankruptcy Code]**

*Debtor's Estimated Liquidation Value of Assets*

*Assets*

| | |
|---|---|
| a. Cash on hand | $   20,000 |
| b. Accounts receivable | $  200,000 |
| c. Inventory | $  150,000 |
| d. Furniture, Fixtures, Equipment & Machinery | $   13,500 |
| j. Lawsuits or other claims against third-parties | $        0 |
| k. Other intangibles (such as avoiding powers actions) | $    6,500 |

*Total Assets at Liquidation Value* — **$  390,000**

*Less*

Secured creditors' recoveries — $  390,000

*Less*

Projected Chapter 7 Cost of Administration — $   15,000

Projected Chapter 11 Administrative Expenses to date — $   30,000

Projected Distribution to Unsecured upon Conversion/
Liquidation: — 0 %